UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

> FILED
>
> FEB 8 2012
>
> CLERK, U.S. DISTRICT COURT
> NORFOLK, VA

JOE HAND PROMOTIONS, INC.,

      Plaintiff,

v.

      Case No.: 2:11cv58

CITIBARS, INC. et al,

      Defendant.

## UNITED STATES MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter is before the Court on Plaintiff Joe Hand Promotion's, Inc.'s motion for default judgment against Defendant Citibars, Inc. ("Citibars") d/b/a Red Bones Raw Bar Seafood Grill. ECF No. 24. Pursuant to 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b), Plaintiff's motion was referred to the undersigned United States Magistrate Judge. ECF No. 26. Based on Plaintiff's arguments at hearing, the record, and the findings contained herein, the undersigned RECOMMENDS that Plaintiff's motion for default judgment be GRANTED IN PART and DENIED IN PART and that default judgment be entered against Citibars.

## I.  INTRODUCTION

Plaintiff is a closed-circuit distributor of sports and entertainment programming, from whom entertainment establishments may purchase commercial exhibition rights. Joe

Hand, Jr., Aff. 2, ECF No. 24 attach. 1. Citibars operates Red Bones Raw Bar Seafood Grill ("the Bar"), which is a restaurant and bar located in Chesapeake, Virginia.

On January 28, 2011, Plaintiff filed a complaint against Citibars seeking damages for violations of the Communications Act of 1934, as amended, 47 U.S.C. §§ 553, 605.[1] Plaintiff's complaint alleges that Citibars intercepted/received and then transmitted the telecast of Ultimate Fighting Championship 94: St-Pierre v. Penn 2, including preliminary events (collectively the "Event"), to patrons of the Bar on January 31, 2009 in violation of Plaintiff's license agreement.

Between February and May, 2011, Plaintiff twice attempted and was unable to serve Citibars through its registered agent at its usual place of business. ECF Nos. 4, 6. Pursuant to Va. Code §§ 12.1-19.1, 13.1-637(B), Plaintiff served process on the Clerk of the State Corporation Commission of the Commonwealth of Virginia, who issued a Certificate of Compliance on June 13, 2011. ECF No. 12. Plaintiff filed the Certificate of Compliance with this Court on June 14, 2011. Id. Citibars failed to file responsive pleadings to Plaintiff's complaint, and the Clerk of this Court entered default against Citibars on July 28, 2011. ECF No. 16.

---

[1] Plaintiff's complaint names "John Doe" as an additional defendant; however John Doe was dismissed from this action on December 7, 2011. ECF No. 28.

On October 26, 2011, Plaintiff filed a motion for default judgment and supporting memorandum against Citibars.[2]  ECF Nos. 23-24.  On January 13, 2012, the undersigned held a hearing at which Plaintiff appeared through counsel, Michael Scott Bucci, Esq., and Citibars failed to appear.[3] ECF No. 32.

### A. Jurisdiction and Venue

The Court must have subject matter jurisdiction over the case and personal jurisdiction over the defaulting party before it can render a default judgment.  Venue must also be proper. This case arises out of the Communications Act of 1934, as amended, 47 U.S.C. §§ 553, 605, meaning that subject matter jurisdiction is proper under 28 U.S.C. § 1331.  See Pl.'s Compl. ¶¶ 1-2, ECF No. 1.

Plaintiff alleges that this Court has personal jurisdiction over Citibars because it is a corporation incorporated in the Commonwealth of Virginia and maintains a principal place of business at 445 Battlefield Boulevard, North, Chesapeake, Virginia 23320.  Pl.'s Compl. ¶ 5.[4]  Although these facts

---

[2] Plaintiff originally filed a motion for default judgment on August 22, 2011, but withdrew that motion on September 27, 2011. ECF No. 22.
[3] On December 9, 2011, pursuant to the Court's Order, (ECF No. 27), Plaintiff filed a Notice of Hearing Date stating the date and time at which the hearing on Plaintiff's motion would be held and mailed said notice to the General Manager at Citibars's registered office, (ECF No. 31.)
[4] The Court presents the factual allegations in Plaintiff's complaint as true, because Citibars has failed to deny them.

demonstrate a constitutionally sufficient relationship between Citibars and this forum, see Int'l Shoe Co. v. Washington, 326 U.S. 310, 316-17 (1945), "absent effective service of process, a court is without jurisdiction to render a personal judgment against a defendant," Fed. Deposit Ins. Corp. v. Schaffer, 731 F.2d 1134, 135 (4th Cir. 1984); see Md. State Fireman's Ass'n v. Chaves, 166 F.R.D. 353, 354 (D. Md. 1996) ("It is axiomatic that service of process must be effective under the Federal Rules of Civil Procedure before a default or a default judgment may be entered against a defendant.").

The Federal Rules of Civil Procedure authorize service of process on corporations by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made . . ." or "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process . . . ." Fed. R. Civ. P. 4(e)(1), (h)(1).

---

See Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."); GlobalSantaFe Corp. v. Globalsantafe.com, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003) ("Upon default, facts alleged in the complaint are deemed admitted and the appropriate inquiry is whether the facts as alleged state a claim.").

Virginia state law authorizes service on a Virginia corporation by "personal service of any officer, director, or registered agent." Va. Code § 8.01-299(1). If the registered agent cannot, with reasonable diligence, be located at the registered office, then service may be accomplished by serving the Clerk of the State Corporation Commission. Va. Code § 13.1-637(B).

On February 9, 2011, Plaintiff's private process server attempted to serve Citibars's registered agent, Linda G. Baker, at Citibars's registered office, "445 North Battlefield Blvd. Chesapeake, VA 23320." Pl.'s 1st Summons 3, ECF No. 4. Process was left with an employee, Sarah Stafford, who represented that Ms. Baker gave her permission to accept process. Id. In the absence of a notarized writing from Citibars's registered agent, Ms. Stafford was not empowered to accept process on behalf of Citibars. See Va. Code § 13.01-637(A). Accordingly, Plaintiff's private process server again attempted to serve process on Ms. Baker at Citibars's registered office on April 19, 2011. Pl.'s 2d Summons 3, ECF No. 6. Ms. Baker could not be located at Citibars's registered office, and attempts were made to locate her through employees and family members. Id. These efforts ultimately proved unsuccessful. Id. Unable to locate Citibars's registered agent after two attempts, Plaintiff served process on the Clerk of the State Corporation Commission.

-5-

ECF No. 12, at 2.   The Clerk of the State Corporation Commission issued a Certificate of Compliance on June 13, 2011, which was filed with this Court on June 14, 2011.   Id., at 1.   Based on the foregoing facts, the Court finds that Plaintiff effectuated service on Citibars in accordance with state law and the applicable Federal Rules of Civil Procedure.   Accordingly, this Court may exercise personal jurisdiction over Citibars.

Venue is proper because Citibars resides in this judicial district and substantially all of the events giving rise to the claim occurred in this judicial district.   See 28 U.S.C. § 1391(b)(1)-(2); Pl.'s Compl. ¶ 3.

## II.  DISCUSSION

### A. Rule 55 Standard

When a party against whom judgment is sought fails to file a responsive pleading or otherwise defend the action, the plaintiff may request, and the court may enter, default judgment against the nonresponsive party.   Fed. R. Civ. P. 55.   Citibars has failed to file responsive pleadings or appear in this matter.   See Fed. R. Civ. P. 12(a) (giving a defendant 21 days after receiving service of the complaint to serve an answer). Pursuant to Rule 55(a), Plaintiff requested the Clerk of the Court to enter default against Citibars on July 27, 2011.   ECF No. 15.   The Clerk entered default against Citibars on July 28,

2011, (ECF No. 16), and the Plaintiff moved for default judgment against Citibars on October 6, 2011, (ECF No. 18).

### B. Plaintiff's Complaint

Although grounds for default judgment against Citibars exist, the Court must nevertheless determine whether Plaintiff's complaint states a claim upon which relief can be granted. See Anderson v. Found. for Advancement, Educ. & Emp't of Am. Indians, 155 F.3d 500, 506 (4th Cir.1998) (holding that district court erred in granting default judgment to plaintiff where plaintiff failed to state a claim); GlobalSantaFe Corp., 250 F. Supp. 2d at 612 n. 3 ("Upon default . . . the appropriate inquiry is whether the facts alleged [in the complaint] state a claim.") Rule 8 of the Federal Rules requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although the Court "must accept the facts alleged in a complaint as true and construe them in the light most favorable to the plaintiff," Coleman v. Md. App., 626 F.3d 187, 188 (4th Cir. 2010), threadbare "legal conclusion[s] . . . [are] not entitled to the assumption of truth." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009). Moreover, the well-pleaded facts of a complaint must permit the court to infer the plausibility rather than the mere possibility of misconduct entitling the plaintiff to relief. Id.; Coleman, 626 F.3d at 190; Francis v. Giacomelli, 588 F.3d

-7-

186, 193 (4th Cir. 2009). Because Citibars has failed to contest Plaintiff's factual allegations, the Court accepts the following well-pleaded facts as true. See GlobalSantaFe Corp., 250 F. Supp. 2d at 612 n. 3.

Plaintiff is a Pennsylvania corporation with its principal place of business in that state. Pl.'s Compl. ¶ 4. Plaintiff entered into a closed-circuit television license agreement to exhibit the Event at closed-circuit locations such as theaters, arenas, bars, clubs, lounges, and restaurants throughout Virginia. Id. ¶ 6. Plaintiff entered into the license agreement so that it could distribute the closed-circuit broadcast of the Event for commercial financial gain. Id. ¶ 7. Plaintiff paid substantial fees for its license. Id. ¶ 6.

In order to broadcast the Event in Virginia, establishments required contractual authorization from Plaintiff. Id. ¶ 7-8. The Event's transmission signal was electronically coded. Id. ¶¶ 10, 12. To telecast the event clearly, the signal needed to be "unscrambled" with electronic decoding equipment or received through satellite coordinates. Id. In exchange for a fee, Plaintiff contracted with various establishments in Virginia to broadcast the Event. Id. ¶ 9. These establishments received the necessary decoding equipment and/or satellite coordinates. Id. ¶ 12.

-8-

Citibars did not contract with Plaintiff to broadcast the Event. Id. ¶¶ 11, 17. Plaintiff alleges that Citibars nevertheless intercepted the interstate communication of the Event on January 31, 2009, and that Citibars transmitted, divulged, and published the Event to the Bar's patrons for its own commercial advantage. Id. ¶ 14.

Plaintiff alleges that Citibars's actions violated § 553 and § 605 of The Communications Act of 1934, as amended. See 47 U.S.C. § 553, 605. Section 553 provides in relevant part:

> No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law.

47 U.S.C. § 553(a)(1). Section 605 provides in relevant part:

> No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

47 U.S.C. § 605(a). Although § 605(a) refers to radio communication, Congress brought satellite communications and cable television services within the ambit of the section when it added subsections (b)-(e) in 1984. See 47 U.S.C. § 605(b)-(e); Nat'l Satellite Sports, Inc. v. Eliadis, Inc., 253 F.3d 900, 911-912 (6th Cir. 2001); DirecTV, Inc. v. Benson, 333 F. Supp. 2d 440, 448 (M.D.N.C. 2004); That's Entertainment, Inc. v. J.P.T., Inc., 843 F. Supp. 995, 999 (D. Md. 1993). Both § 553 and § 605 permit an aggrieved party to bring suit against the violator in federal court. 47 U.S.C. § 553(c)(1), 605(e)(3)(A).[5] Plaintiff alleges that it is an aggrieved party under both sections. Pl.'s Compl. ¶¶ 22, 30. Based on the foregoing facts and in light of the relevant law, the Court finds that Plaintiff has satisfied the pleading standards of the Federal Rules of Civil Procedure and stated a claim for which relief can be granted.

### III. Appropriate Relief

Citibars's failure to defend this action does not automatically entitle Plaintiff to the relief sought, see Joe Hand Promotions, Inc. v. Coaches Sports Bar, -- F. Supp. 2d. --, 2011 WL 4381048, at *1 (E.D.N.C. Sept. 19, 2011); Fed. R. Civ.

---

[5] Section 605 defines aggrieved part as "any person with proprietary rights in the intercepted communication by wire or radio, including wholesale or retail distributors of satellite cable programming . . . ." 47 U.S.C. § 605(d)(6)

P. 8(b)(6), 55(b)(2), and relief may not exceed the amount demanded in the pleadings, see Fed. R. Civ. P. 54(c).

Sections 553 and 605 both permit statutory damages up to $10,000.00 and recovery of costs and expenses, including reasonable attorney's fees. 47 U.S.C. §§ 553(c), 605(e). However, § 553 allows for enhanced damages up to $50,000.00 for willful violations of the section, whereas § 605 allows up to $100,000.00 for the same conduct. 47 U.S.C. §§ 553(c)(3)(B), 605(e)(3)(C)(ii). Plaintiffs may only recover under one section. See Kingvision Pay-Per-View, Ltd. v. Gutierrez, 544 F. Supp. 2d 1179, 1184 (D. Co. 2008); Integrated Sports Media, Inc. v. Buruca Brother's Va., Inc., Civil Action No. 1:11cv0839, 2011 WL 5873078, at *5 (E.D. Va. Nov. 1, 2011). Plaintiff has elected to recover damages pursuant to § 605, which allows the greater maximum award.[6]

### A. Statutory Damages

Under § 605 an aggrieved party may recover the actual damages suffered as a result of the violator's conduct or statutory damages for each violation "in a sum not less than $1,000 or more than $10,000, as the court considers just." 47 U.S.C. § 605(e)(3)(C)(i)(I)-(II).

---

[6] Plaintiff's Complaint appears to seek recovery under both sections, but Plaintiff's counsel stated at hearing that it wished to recover under § 605.

-11-

Plaintiff has embarked upon a nationwide effort to prevent the erosion of its customer base as a consequence of "signal piracy," which occurs when unauthorized establishments intercept and broadcast programs for which Plaintiff possesses exhibition licensing rights. Hand Aff. 2. To prevent such activity, Plaintiff has expended considerable sums on auditors and law enforcement personnel, who detect and identify unauthorized and unlicensed broadcasts of its programs. Id.

On the nigth of the Event, Plaintiff sent a private investigator to the Bar, who spent roughly half-an-hour there. Jerauld S. Peacock Aff. 2. During that time, he counted 47, 50, and 49 patrons present. Id. The investigator estimated that the Bar had a capacity of approximately 120 people. Id. He also observed the Event being broadcast over three TVs in the establishment. Id. at 1. Although the investigator paid no cover charge, he observed 8.5 x 11 sheets of paper on the side entrance of the establishment and the door of the men's bathroom advertising "the UFC fight 'tonight.'" Id. Had Citibars contracted with Plaintiff to broadcast the Event, Plaintiff would have charged it $1,025.00 based on the Bar's estimated occupancy. Hand Aff. 3; Pl.'s Supp. Mem. Ex. 1, ECF No. 24 attach. 1.

Plaintiff acknowledges that actual damages in this case are limited and therefore seeks $10,000.00, the maximum statutory

-12-

amount permitted, for deterrence purposes.    Pl.'s Supp. Mem.
3-4, ECF No. 24.    Courts have employed two general approaches to
calculating statutory damages under § 605.    They award either a
flat damage amount within the statutory range, or they calculate
damages based on the number of patrons who viewed the pirated
programming multiplied by a reasonable rate.    See Joe Hand
Promotions,   Inc.   v.   Veltsistas,   LLC,   Civil   Action   No.
1:10cv1442, 2011 WL 5826059, at *2 (E.D. Va. Oct. 21, 2011)
(determining that $100.00 was a reasonable per-customer rate,
where   an   average   of   50   customers   viewed   the   pirated
programming); J & J Sports Prods., Inc. v. Lara Sport House
Corp., No. 1:10-cv-01369, 2011 WL 4345114, at *6 (E.D. Va. Aug.
26, 2011) (awarding flat rate of $2,200, which was the licensing
fee   charged   based   on   establishment's   capacity,   because   a
per-patron rate would not deter future unlawful conduct).

     Plaintiff has presented evidence of the considerable time,
energy, and resources it has expended in an effort to protect
the rights to its programming from unauthorized broadcasts. Hand
Aff. 2, 4-5.    A cursory search of the legal databases reveals
that signal piracy is a persistent problem for companies in
Plaintiff's line of business and that courts in this district
have consistently awarded more than the minimum statutory damage
amount in an effort to deter such unlawful behavior. See, e.g.,
J & J Sports Prods., Inc. v. Bougie, Inc., No. 1:10-cv-01374,

-13-

2011 WL 6202909, at *6 (E.D. Va. Nov. 25, 2011) ($6,200.00);
Integrated Sports Media, 2011 WL 5873078, at *5 (2,000.00);
Veltsistas, 2011 WL 5826059, at *2 ($5,000.00); Lara Sport House
Corp., No. 1:10-cv-01369, 2011 WL 4345114, at *6 ($2,200.00).
In light of these facts, awarding Plaintiff $1,025.00 as
compensation for the licensing fee it lost due to Citibars's
unlawful conduct would be insufficient to deter future conduct.
The Court agrees with other courts in this district that $100.00
is a reasonable per-patron rate to charge for violating § 605.
See Veltsistas, 2011 WL 5826059, at *2.  Given that an average
of 49 patrons were present at the Bar on the night in question,
the Court finds that statutory damages in the amount of
$4,900.00 is just compensation for Plaintiff's losses and will
deter Citibars from engaging in future signal piracy.  See 47
U.S.C. § 605(e)(3)(C)(i)(II); Veltsistas, 2011 WL 5826059, at
*3; Joe Hand Promotions, Inc. v. Bougie, Inc., No. 1:09cv00590,
2010 WL 1790973, at *5 (E.D. Va. Apr. 12, 2010).

### B. Enhanced Damages

In addition to statutory damages, Plaintiff seeks enhanced
damages of $25,000.00.[7]  Section 605 allows courts, in their
discretion, to increase the damage award by up to $100,000.00

---

[7]  Plaintiff's Complaint seeks enhanced damages of $50,000.00
under § 553 and $100,000.00 under § 605. Pl.'s Compl. ¶¶ 24, 32.
Plaintiff's Motion for Default Judgment simply asks for
"enhanced statutory damages;" however, at hearing, Plaintiff's
counsel specifically requested $25,000.00.

where a defendant committed the violation "willfully and for purposes of direct or indirect commercial advantage or private financial gain." 47 U.S.C. § 605(e)(3)(C)(ii).

Plaintiff argues that Citibars could not have inadvertently or innocently intercepted and broadcast the Event to the Bar's patrons. See Pl.'s Supp. Mem. 2; Hand Aff. 3. Based on Plaintiff's explanation of the technology involved, the Court agrees. "Signals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems." Lara Sport House Corp., 2011 WL 4345114, at *6 (quoting Time Warner Cable v. Googies Luncheonette, 77 F. Supp. 2d 485, 490 (S.D.N.Y. 1999)). The Bar is a commercial establishment, and Citibars advertised the Event to the Bar's patrons, at least 50 of whom were present to view the entertainment at no cost to Citibars. Accordingly, the Court has no trouble finding that Citibars willfully intercepted and published the Event for the purpose of commercial advantage and financial gain. See 47 U.S.C. § 605(a), (e)(3)(C)(ii).

Enhanced damage awards in this district have varied rather widely. See, e.g., J & J Sports Prods., Inc. v. Bougie, Inc., 2011 WL 6202909, at *7 ($35,000.00); J & J Sports Prods., Inc. v. Ricos Tacos Moya Restaurant, Inc., No. 1:10-cv-01368, 2011 WL 6100286, at *6 (E.D. Va. Nov. 21, 2011) ($20,000.00); Integrated Sports Media, 2011 WL 5873078, at *7 ($2,000.00); Veltsistas,

-15-

2011 WL 5826059, at *3 ($5,000.00); J & J Sports Prods., Inc. v. Great Latin Restaurants, L.C., Civil Action No. 1:11cv459, 2011 WL 5873071, at *5 (E.D. Va. Sept. 15, 2011) ($100,000.00). In assessing the appropriate amount of enhanced damages, courts have considered whether the offender is a repeat-violator; whether the plaintiff suffered significant actual damages; whether the defendant reaped substantial unlawful monetary gains; whether the defendant advertised broadcast of the event; and whether the defendant charged a cover charge or premiums for food and drinks during the broadcast. See J & J Sports Prods, Inc. v. Endzone Sports Bar, LLC, No. 1:10-cv-01370, 2011 WL 6151417, at *6-7 (E.D. Va. Nov. 23, 2011); Kingvision Pay-Per-View Ltd. v. Villalobos, 554 F. Supp. 2d 375, 383 (E.D.N.Y. 2008). Courts have also considered the number of patrons who viewed the unlawful broadcast, the establishment's proximity to a population center, and the effect the damage award might have on the defendant's ability to remain in business. See Great Latin Restaurants, L.C., 2011 WL 5873071, at 5-6; Joe Hand Promotions, Inc., v. Bougie, Inc., 2010 WL 1790973, at *6 (E.D. Va. Apr. 12, 2010).

Plaintiff concedes that it did not suffer significant actual damages, and there is no evidence that Citibars is a repeat-violator or that it charged cover or a premium for food and beverages on the night in question. Plaintiff has not

-16-

submitted evidence from which the Court might infer that Citibars reaped substantial profits as a consequence of its unlawful activities. The Court is also mindful that "a single violation is not so serious as to warrant putting the restaurant out of business." Garden City Boxing Club, Inc. v. Polanco, No. 05 Civ. 3411, 2006 WL 305458, at *5 (S.D.N.Y. Feb. 7, 2006). Nevertheless, the Bar was at roughly 42% capacity at 1:00 a.m. on a Monday morning when Plaintiff's investigator observed the Event, and the Event was advertised in two locations within the Bar. Moreover, the Bar is located in Hampton Roads, Virginia, one of the state's most populous regions. In light of these facts and the previously stated need to deter future signal piracy at the Bar and throughout this judicial district, the Court finds that $15,000.00 is an appropriate enhanced damages award.

### C. Attorney's Fees and Costs

Pursuant to § 605, Plaintiff has requested full costs and expenses, including attorney's fees. See 47 U.S.C. § 605(e)(3)(B)(iii); Pl.'s Supp. Mem. 4. Plaintiff has submitted the declarations of Mr. Bucci, managing member and owner of Bucci & Dix, LLC. M. Scott Bucci Decl., ECF No. 24 attach. 2; Scott Bucci Supplemental Decl., ECF No. 33. Mr. Bucci's declarations detail the work performed, hours expended, and the total amount to be paid for representing Plaintiff in

this matter.  Mr. Bucci declares that his firm generated $3998.00 in legal fees and an additional $484.83 in costs in this matter.  Mr. Bucci declares that his firm spent a total of 22.9 hours drafting pleadings and correspondence, performing legal research, compiling documents, and preparing for and traveling to the hearing before the Court on January 13, 2012. Costs include, but are not limited to, this Court's $350.00 filing fee, gas mileage, and subpoena fees.  Mr. Bucci declares that hourly rates for attorneys who worked on this matter are $250.00 per hour and $160.00 per hour and that paralegal time is billed at $90.00 per hour.  The Court finds that the costs and attorney's fees incurred in this matter constitute reasonable compensation for the time expended to enforce Plaintiff's rights.  Accordingly, it recommends awarding Plaintiff the sum of the costs and fees incurred, $4,482.83.

## IV.  RECOMMENDATION

For the foregoing reasons, the Court RECOMMENDS that Plaintiff's motion be GRANTED to the extent that it seeks entry of default judgment against Citibars and that an Order be entered directing Citibars to pay a total of $24,382.83 to Plaintiff in damages: $4,900.00 in statutory damages, $15,000.00 in enhanced damages, and $4,482.83 in attorney's fees and costs. See 47 U.S.C. § 605(e)(B)(iii), (C).  To the extent that

-18-

Plaintiff's motion seeks relief inconsistent with this recommendation, the Court RECOMMENDS that the motion be DENIED.

## V. **REVIEW PROCEDURE**

By copy of this Report, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure:

1. Any party may serve upon the other party and file with the Clerk specific written objections to the foregoing findings and recommendations within 14 days from the date of the mailing of this Report to the objecting party, computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, plus three days permitted by Rule 6(d) of said rules. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). A party may respond to another party's objections within 14 days after being served with a copy. Fed. R. Civ. P. 72(b)(2).

2. A district judge shall make a de novo determination of those portions of this Report or specified findings or recommendations to which objection is made. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of the right to appeal from a judgment of the Court based on such findings and recommendations. Thomas v. Arn, 474 U.S. 140 (1985); Carr v.

-19-

<u>Hutto</u>, 737 F.2d 433 (4th Cir. 1984); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984).

_____
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia

February  7 , 2012